AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia


FILED
AUG 24 2018
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
Records and information associated with the cell site towers/sectors servicing 2324 George Washington Memorial Highway, Hayes Virginia belonging to T-Mobile  DMM RJK

Case No. 4:18sw50

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 2113(a), and 924(c) | Conspiracy, Bank Robbery, and Possession of a Firearm in Furtherance of a Crime of Violence |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

REVIEWED AND APPROVED:

*/s/ MMC*
Megan M. Cowles
Assistant United States Attorney

*Applicant's signature*

David M Mitchell SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug. 24, 2018

City and state: Norfolk, VA

ROBERT J. KRASK
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*



## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

4:18sw50

### Introduction and Agent Background

I, David M. Mitchell, being duly sworn, hereby depose and state:

1. I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI). I have been employed by the FBI as a Special Agent since July, 2017. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code (U.S.C.), § 2510 (7). That is, I am an officer of the United States (U.S.), who is empowered by law to conduct investigations regarding violations of U.S. law, to execute warrants issued under the authority of the U.S., and to make arrests of the offenses enumerated in Title 18, U.S.C., § 2252A(a)(2). Prior to my employment with the FBI, I served as an officer in the U.S. Marine Corps for approximately six years. In the course of my duties, I am responsible for investigating crimes which include, but are not limited to, violent crimes and gangs, crimes against children, and bank robberies. I have previously been involved in criminal investigations concerning violations of federal laws. Since joining the FBI, your affiant has received specialized training in criminal investigations, identifying and seizing electronic evidence, recovery, and social site investigations.

2. The information set forth in this affidavit is known to me as a result of an investigation personally conducted by me and other law enforcement agents. Thus, the statements in this affidavit are based in part on information provided by Special Agents ("SAs") and other employees of the FBI, as well as other investigators employed by federal or state governments. I have received training and have participated in investigations involving persons who rob financial institutions. I have also discussed and reviewed these materials with other law enforcement

1

officers.

3. This affidavit is made in support of an application for a warrant requiring AT&T Wireless, Sprint Corporation, T-Mobile USA, and Verizon Wireless, providers of electronic communication service within the meaning of Title 18, U.S.C. § 2510(15), to disclose to the U.S. Attorney's Office (USAO) and to the Federal Bureau of Investigation (FBI) all records and information associated with the cell-site towers/sectors servicing 2324 George Washington Memorial Highway, Hayes, VA, between 9:05 a.m. and 9:45 a.m. (EDT) on March 31, 2018, which are further described in Attachment B.

4. This affidavit is based upon information that I have gained from my investigation, my training and experience, as well as information gained from conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, U.S.C., § 371, 2113(a) and 924(c) are present in the location data and call detail records associated with the cell-site towers/sectors located in a close geographic proximity to Robbery One (described below) at the time of the robbery.

**Pertinent Federal Criminal Statutes**

5. This investigation concerns alleged violations of Title 18. U.S.C., §§ 371, 2113(a) and 924(c).

6. Title 18, U.S.C., § 371 provides for penalties "[i]f two or more persons conspire either to commit any offense against the U.S., or to defraud the U.S., or any agency thereof in any

manner for any purpose, and one or more of such persons do any act to effect the object of the conspiracy."

7. Title 18, U.S.C. § 2113(a) provides for penalties if a person "by force and violence, or intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association."

8. Title 18, U.S.C., § 924(c) provides for penalties for any person who, "during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the U.S., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

## Other Legal Authority

9. The legal authority for this search warrant application regarding AT&T Wireless, Sprint Corporation, T-Mobile USA, and Verizon Wireless is derived from Title 18, U.S.C. §§ 2701-2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access." Section 2703(a) provides in relevant part as follows:

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of an electronic communication that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of an electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

10. Title 18, U.S.C. § 2703(b) provides in relevant part as follows:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection -

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant.

(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service –

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

11. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, U.S.C. § 2711(3), Title 18, U.S.C. §§ 2703(a), (b)(1)(A) & (c)(l)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." Title 18, U.S.C. § 2711(3)(A)(i).

12. This investigation involves offenses within the jurisdiction and proper venue of the U.S. District Court for the Eastern District of Virginia (EDVA), as more fully articulated below.

## Definitions

13. "Bank," as used herein, means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the U.S., including a branch or agency of a foreign bank, and any institution the deposits of which are insured by the Federal Deposit Insurance Corporation (FDIC).

14. "Credit union," as used herein, means any Federal credit union and any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board, and any "Federal Credit Union" as defined in section 2 of the Federal Credit Union Act.

15. "Savings and loan association," as used herein, means a Federal savings association or State savings association having accounts insured by the FDIC; and a corporation that is operating under the laws of the U.S.

### Specifics of Telephone Location Data and Call Detail Records

16. Based upon my training and experience and information relayed to me by agents and others involved in this investigation, your affiant knows that it is common for bank robbers to utilize cellular telephones to coordinate their movements with co-conspirators, to dump stolen / get-away vehicles, and to meet at rendezvous points.

17. Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular telephones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as telephone calls, SMS/MMS text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device.

18. In addition to a unique telephone number, each cellular telephone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cellular telephone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number

("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

19. Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. For each communication, these records may include the telephone number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as telephone calls or SMS/MMS text messages).

20. Accordingly, the information logged by a cellular service provider may present key information about a bank robber's location and activities during key moments of an investigation, as well as highlight communications and coordinated activities with other co-conspirators.

**Probable Cause to Search the Subject Premises**

21. The FBI is investigating a series of bank robberies and an attempted bank robbery involving one or more subjects who appear to be responsible for at least three bank robberies and one attempted bank robbery within the EDVA. Each of the banks is insured by the FDIC, as noted below. The robberies and attempted robbery occurred between January 23, 2018, and May 18, 2018.

22. <u>The attempted robbery</u>: On January 23, 2018, at approximately 4:53 p.m., witnesses identified a white male pulling into the parking lot of the FDIC insured Branch Banking and Trust, located at 7136 Lewis B. Puller Memorial Highway, Mattaponi, (Virginia) VA. The male exited a dark green or beige SUV carrying a mask and wearing dark clothes. As he approached the bank door, he stopped, turned around, and ran back to his vehicle, and left the area driving eastbound on State Route 33.

23. <u>Robbery One</u>: On March 31, 2018, at approximately 9:27 a.m., a white male was captured on surveillance video entering the FDIC insured Branch Banking and Trust, located at 2324 George Washington Memorial Highway, Hayes, VA. The male was wearing dark pants, a dark coat, white gloves, a dark beanie, sunglasses, and a fake beard. The male was captured on surveillance camera footage with what appears to be a cellular telephone to his right ear as he entered the bank. The male approached the teller counter, brandished a pistol, and verbally demanded the teller's cash from its drawer. The teller complied, and handed the drawers' contents over to the male. The male took approximately $1,810 from the teller and fled the bank. Surveillance video captured the male initially fleeing on foot from the bank. The male then returned to a residential alley behind the bank, appeared to get into a vehicle of unknown make and model, and fled the scene.

24. <u>Robbery Two</u>: On May 16, 2018, at approximately 9:37 a.m., a white male was captured on bank surveillance video entering the FDIC insured Citizens and Farmers Bank located at 2800 George Washington Memorial Highway, Yorktown, VA. The male was wearing dark pants, a light colored shirt, clear gloves, a dark beanie, glasses, and a fake beard. The male had the right sleeve of the shirt pushed up, revealing what appeared to be a fake tattoo on his forearm.

The male approached the teller counter carrying what appeared to be a piece of paper. The male retained the paper and verbally demanded the teller's cash from its drawer. Two tellers complied, and handed both drawers' contents over to the male. The male took approximately $1786 from the tellers and fled the bank. Surveillance video captured the male entering a gray Dodge Ram, and leave the area of the bank. The male travelled north on George Washington Memorial Highway.

25. Robbery Three: On May 18, 2018, at approximately 1:58 p.m., a white male was captured on surveillance video entering the FDIC insured Old Point National Bank, located at 13480 Carrolton Road, Carrolton, VA. The male was wearing dark pants, a light colored shirt, a dark beanie, sunglasses, and a fake beard. The male had the right sleeve of the shirt pushed up, revealing what appeared to be a fake tattoo on his forearm. The male approached the teller counter, and verbally demanded the teller's cash from her drawer. Two tellers complied, and handed both drawers' contents over to the male. The male took approximately $1,629 from the tellers and fled the bank, driving away from the bank in a Chrysler Sebring convertible. The Chrysler Sebring convertible was later located in a parking lot near the Old Point National Bank in Carrollton, VA. The Chrysler Sebring convertible was unoccupied and running at the time it was discovered by local law enforcement, who seized the vehicle.

26. Within the approximately $1,629 the tellers gave to the male was a GPS tracking device. This GPS tracker provided a wireless signal that allowed local, state, and federal law enforcement to track its location, and was activated once it was moved from its "home" position in the bank. The Isle of Wight County Sheriff's Office (IOWSO) received a notification that the GPS tracker was activated, and IOWSO's Deputies pursued the GPS tracker as it moved north on

the James River Bridge, and eventually stopped in Newport News, VA. Local law enforcement identified the vehicle that housed the GPS tracker, a gray Nissan Altima with license plate UYY6095, and approached the vehicle at approximately 2:14 p.m. At the time law enforcement approached the vehicle, there was one male in the driver's seat of the vehicle and one male standing outside the passenger side of the vehicle.

27.     The driver, later identified as Roscoe Freeman (Freeman), surrendered at the scene. The male standing by the passenger side of the vehicle fled the scene on foot. As he fled the scene, he was observed throwing something by law enforcement. Law enforcement seized the abandoned property thrown, to include a black knit hat, two rubber gloves, and a black and gray baseball cap with two fake tattoo sleeves and a fake beard inside of it. Local law enforcement obtained a state search warrant for the vehicle. Among the items inside the vehicle were U.S. currency, the GPS tracker, two cellular telephones and other elements of the robber's disguise, including black framed sunglasses, a piece of white clothing and a piece of grey clothing. Local law enforcement determined the registered owner of the gray Nissan Altima, license plate UYY6095, to be Russell Hudgins (Hudgins), whose DMV photograph matched the male in the surveillance footage from the robbery.

28.     Freeman was taken into custody, transported to the IOWSO and, after he was advised of his *Miranda* rights, he made a statement to law enforcement. Freeman stated that he knew Hudgins, and he had picked up Hudgins in the vicinity of the Old Point National Bank located at 13480 Carrolton Road, Carrolton, VA. Freeman further stated that Hudgins was wearing a fake beard at the time Freeman picked him up. Freeman later stated to an IOWSO Investigator that he was only supposed to drive while Hudgins robbed the bank.

29. Over the course of the evening of May 18, 2018, the York-Poquoson Sheriff's Office (YPSO) and Newport News Police Department surveilled multiple locations associated with Hudgins. Law enforcement located Hudgins at apartment B at 500 Powellville Lane, Newport News VA. Hudgins was taken into custody and then transported to the IOWSO. The YPSO obtained a state search warrant for the above-referenced apartment related to the Yorktown bank robbery on May 16, 2018 (Robbery Two). A subsequent search of the apartment by the YPSO revealed an additional fake tattoo sleeve similar to the sleeve recovered in Newport News on May 18, 2018.

30. The IOWSO obtained state search warrants for the two cellular telephones seized from Hudgins' Nissan Altima. An IOWSO Deputy determined the telephone models and the numbers associated with the telephones to be a Samsung SM-S727VL associated with (757) 759-8486 (SUBJECT TELEPHONE #1) and a LG model LGLS755 associated with (757) 818-7531 (SUBJECT TELEPHONE #2). Hudgins identified SUBJECT TELEPHONE #1 as his telephone and unlocked it for investigators. SUBJECT TELEPHONE #2 was not locked. The phone linked to (757) 759-8486 lists (757) 818-7531 as "Roscoe" in its contacts. The contact list stored in SUBJECT TELEPHONE #1 lists SUBJECT TELEPHONE #2 for "Russel." Initial analysis of stored call and text message data for SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2 showed evidence of multiple telephone calls and text messages between Hudgins and Freeman.

31. Ronald Flythe, an inmate at Western Tidewater Regional Jail (WTRJ), spoke with investigators on June 13, 2018, and June 18, 2018. Flythe told investigators that he was Russell Hudgins' cell mate for approximately one month at WTRJ. Flythe also told investigators that

Hudgins had confessed to committing three total bank robberies: one in Carrolton, VA; one in Yorktown, VA; and one other bank robbery in an unknown location.

32. On or about July 2, 2018, Sprint Corporation and Verizon Wireless were served with search warrants by the government for call detail records to include historical cell-site location information (CSLI) for SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2. Both Sprint Corporation and Verizon Wireless provided electronic records to the government on July 11, 2018, and July 9, 2018, respectively. Initial analysis has determined that the CSLI records place SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2 at the location of Robbery Two on May 16, 2018, during the time of the actual robbery. The CSLI records place SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2 near the site of the bank robbery just prior to Robbery Three on May 18, 2018.

33. Initial analytical work also determined that the CSLI for SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2 regarding Robbery One on March 31, 2018, was inconclusive. The CSLI for SUBJECT TELEPHONE #1 (Hudgins) show a gap in time between 7:15 a.m. and 8:13 p.m. on March 31, 2018, where there were no calls made. The CSLI for SUBJECT TELEPHONE #2 (Freeman) indicates the telephone was in use all day in Newport News, VA, and not in Gloucester County, VA on the morning of March 31, 2018.

34. It is possible that the device appearing to be a cellular telephone in surveillance footage for Robbery One was not in use (i.e. connected and communicating to a cell tower) and/or was used as a ruse in order to delay any attempts to thwart the robbery in progress. It is also possible that the telephone in question was registered to an alternate number through an alternate carrier. Your Affiant believes that by analyzing the CSLI described herein will be the yet-

11

unidentified mobile communications device(s) used by the perpetrator(s) in furtherance of the foregoing criminal activity.

## Conclusion

35. Based on the facts set forth above, your affiant believes probable cause exists that information obtained from all records and information associated with the cell-site towers/sectors servicing 2324 George Washington Memorial Highway, Hayes, VA, between 9:05 a.m. and 9:45 a.m. (EDT) on March 31, 2018, which are further described in Attachment B will identify any unknown SUBJECT WIRELESS DEVICES being used while in the areas described above at the time of violations of Title 18, U.S.C., § 371, 2113(a), and 924(c).

36. Accordingly, your affiant requests that a search warrant be issued, requiring AT&T Wireless, Sprint Corporation, T-Mobile USA, and Verizon Wireless, providers of electronic communication service within the meaning of Title 18, U.S.C., § 2510(15), to disclose to the USAO and the FBI all records and information associated with the cell-site towers/sectors servicing 2324 George Washington Memorial Highway, Hayes, VA, between 9:05 a.m. and 9:45 a.m. (EDT) on March 31, 2018, which are further described in Attachment B.

## Sealing Request

37. Your affiant requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an on-going criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by

giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

FURTHER AFFIANT SAYETH NOT.

_____
David M. Mitchell
Special Agent
Federal Bureau of Investigation

This affidavit has been reviewed for legal sufficiency by AUSA Megan M. Cowles.

Reviewed: _____
Megan M. Cowles
Assistant United States Attorney

Subscribed and sworn before me this 24th day of August, 2018, in the City of Norfolk, Virginia.

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
## Property to be Searched

Records containing any information about the calls and text messages including call detail, SMS/MMS text message detail reports, and any precision location measurement record or specialized location records such as Network Event Location System (NELOS), Per Call Measurement Data (PCMD), TrueCall, and Real Time Tool (RTT), but excluding the content of any communications, associated with the cell-site towers/sectors servicing 2324 George Washington Memorial Highway, Hayes, VA, between 9:05 a.m. and 9:45 a.m. (EDT) on March 31, 2018 for AT&T Wireless, Sprint Corporation, T-Mobile USA, and Verizon Wireless.

a. AT&T Wireless is a company headquartered at 208 South Akard Street, Dallas Texas, in the Northern District of Texas.

b. Sprint Corporation is a company 6200 Sprint Parkway, Overland, Kansas, in the District of Kansas.

c. T-Mobile USA is a company headquartered at 12920 Southeast 38th Street, Bellevue, Washington, in the Western District of Washington.

d. Verizon Wireless is a company headquartered at 1 Verizon Way, Basking Ridge, New Jersey, in the District of New Jersey.

14



## ATTACHMENT B

**Particular Things to be Seized**

All information about described in Attachment A for the period of 9:05 a.m. to 9:45 a.m. EDT on March 31, 2018. The Service Providers named in the Warrant are required to disclose to the United States all records and other information (not including the contents of any communications) about all communications made using the cell towers during the corresponding time frame listed in Attachment A, including the records that identify:

A. The telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

B. The source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

C. The date, time, and duration of each communication;

D. The "sectors" (i.e., the faces of the towers) that received a radio signal from each locally served wireless device; and

E. The type of communication transmitted through the tower (such as telephone call or SMS/MMS text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Part I.